**17**

Grand Lodge of the
A. O. U. W.
of Rhode Island
        vs.                    } No. 31579
A. W. Quigg, alias
        October 26, 1917

BARROWS, J.  Heard on the sufficiency of pleas in abatement.

By writ dated October 17, 1912, plaintiff, alleging itself to be a Rhode Island corporation, brought suit against defendant in an action of general assumpsit for money had and received.

Defendant pleaded in abatement four pleas, all of which deny the existence of any such corporation as the Grand Lodge of Ancient Order of United Workmen of Rhode Island.

The pleas aver that plaintiff was doing an insurance business without charter from the Legislature; that it purported to act under a charter for a charitable corporation and that the aims stated in its articles of association were charitable, while in fact, the object of the corporation was to transact a fraternal insurance business; that as a result the charter issued in pursuance of such articles was a nullity.

Among the papers no traverse of these pleas appears but at the hearing plaintiff's counsel stated that he intended to file such traverse and the hearing proceeded as if a general traverse of the pleas had been filed.

Testimony was offered showing that Articles of Association were filed October 7, 1908, by John Curran and six other men, setting forth an agreement to associate under Chap. 176 of General Laws of Rhode Island (1896), the name of said proposed corporation to be the Grand Lodge of the

Ancient Order of United Workmen of Rhode Island. The purpose of the organization as set forth in these articles is as follows: "Third. Said corporation is constituted for the purpose of uniting in social and fraternal association all acceptable men of sound bodily health and good moral character, to promote benevolence, charity and morality, to aid members disabled by accident or sickness, or the wives, children or other relatives of, or any persons dependent upon such members, and to assist the widows, orphans or other relatives of deceased members, or any person dependent upon deceased members."

It is conceded that the attempt was made to incorporate under Sec. 11 of said Chap. 176. These Articles of Association purport to have been amended March 13, 1911, by a vote of the executive committee of the Ancient Order of United Workmen passed March 1, 1911, and notice of which was given to the Secretary of State on March 9, 1911. The attempted amendment does not make any change in the organization. It merely includes women therein by the insertion in the clause above quoted after the word "men" of the words "and women."

Pursuant to the original Artic'es of Association a certificate of incorporation was issued by the Secretary of State on October 28, 1908. For at least seven years prior to that time, as appears by Defendant's Exhibit C, (the Constitution and General Laws of the Grand Lodge), there had been in existence a body known as the Grand Lodge of the Ancient Order of United Workmen. No reason is given for procuring a state charter for this body. For some reason those in control wished the Grand Lodge incorporated. That reason evidently was not that it might do an insurance business because this feature of Grand Lodge business proceeded thereafter just as it had prior thereto, except that the Lodge thought it was acting under the charter. Beneficial certificates had been issued at least since 1901, and from 1908 until 1912 they continued to be issued by the officers of the Grand Lodge without supervision or control of the State Insurance Department.

There is no record or testimony showing at any time an organization meeting by the incorporators under the charter. The only evidence relating to the charter is a record that the executive committee voted to procure the charter October 7, 1908, and that on November 4, 1908, a report was received that a charter had been granted, and that at a meeting of the Grand Lodge in February, 1909 it was voted to accept the charter. The Grand Lodge met but once a year, its business being conducted in the meantime by the executive committee.

On this evidence there can be no doubt that the association failed to organize pursuant to the requirements of General Laws (1896) Chap. 176, as amended by Public Laws, 1906, Chap. 1459.

Defendant urges that no de facto corporation could exist under such circumstances, basing his contention on the authority of Ireland vs. Globe Milling & Reduction Co., 20 R. I. 190 at 193, in which the Court makes the distinction between user by a corporation created by the Legislature and one organized under the General Laws, and says that in the latter event there can be no corporate existence without compliance with all the requirements of the statute. An examination, however, of the case of Bigelow vs. George, 73 Ill. 197, cited by the Court in support of its position, shows that distinction was there suggested between a case where such an attempted corporation is suing a stockholder or other individual for benefits received and a case where

defendants are seeking to escape personal liability. In the Illinois case, the defendants when sued as partners were endeavoring to escape individual liability by raising the defence of de facto corporate existence, and the Court held that the statutory requirements must be fully complied with in order to release defendants from personal liability, and that de facto existence could not be set up for this purpose. We do not believe that our Court in the Ireland case intended to lay down the broad proposition that there could be no de facto corporation where the attempted incorporation was under the general law and all steps of organization had not been pursued. We therefore hold that plaintiff by user could become a de facto corporation if there existed any law under which it could be created. In spite of the continuance of the business as before attempted incorporation we find sufficient user to bring the facts up to the requirements for de facto existence.

There can be no question that in the absence of law entitling plaintiff to be incorporated and to conduct an organization such as was contemplated, the claim that the corporation is a nullity can be raised by any one and at any time and is not cured by de facto existence.

10 Cyc. 520.

Defendant claims that this plaintiff in reality is doing an insurance business; that such a business corporation could be organized only by act of the General Assembly (Gen Laws, Chap. 176, Sec. 10). The nature of the business done by just such a Grand Lodge as plaintiff is discussed in State vs. Miller, 66 Ia. 33, and furnishes strong support for defendant's claim. It seems to us, however, that the test to be applied in determining whether this plaintiff could incorporate under Sec. 11 of Chap. 176 is not to inquire whether the bulk of its business is insurance but what is the basic reason for its existence. An examination of the duties of the Grand Lodge and its powers, as shown in the Constitution and General Laws of the Order offered as exhibits in this case, convinces us that the main purpose is to exercise a general supervision over the welfare of the subordinate lodges of the Ancient Order of United Workmen in the State of Rhode Island and that the insurance feature was but one, although perhaps a large element of its actual work. It surely cannot be fairly said that if the insurance feature were taken away, there would be no reason for the existence of a Grand Lodge, and it seems to us that the duties of the Grand Lodge apart from insurance were fairly within the scope of social, charitable and religious organizations covered by Sec. 11. We cannot agree with defendant in his contention that Public Laws 1912, Chap. 803, indicates that there was no mode of incorporation of fraternal benefit societies under the General Laws prior to 1912. It seems to us rather that the loose method of incorporation prior to that time was intended to be cured and that the act of 1912 was intended to permit a de facto corporation to continue but subject to the control of the insurance commissioner. There remains the question as to whether this defendant is estopped to dispute the corporate capacity of the plaintiff. He relies upon Slocum vs. The Prov. Steam & Gas Pipe Co., 10 R. I. 112, which holds that in the absence of estoppel inquiry may at any time be made into the question whether the corporation which assumes to act as such has a legal existence.

The case of Slocum vs. Warren, 10 R. I. 116 at 121, however, states that a person who has entered into a contract with the company as a corporation and has received the benefit of his contract is estopped to deny the legality of the corporate organization.

Numerous cases are to be found where one who has borrowed money from a de facto corporation and given his note therefore is estopped to deny corporate existence.

Bigelow on Estoppel, 6th ed. p. 499.

We see no reason for holding that the word "contract" as used by our Court should be limited to an express contract. The reasoning is equally applicable to an implied contract if estoppel is based on the fact that one has received the benefit of the contract. A defendant who, as alleged in this declaration, has received with guilty knowledge the funds of a so-called corporation, stands in a poor position to deny the existence of the corporation.

Weill & Co. vs. Crittenden, 139 Cal. 488 (1903).

That this plaintiff's corporate existence is open to direct attack by the State is probably true; perhaps even the validity of its beneficial certificates might be questioned, but it seems to us that on the facts which we have before us, defendant is estopped to deny the corporate existence.

For the above reasons we find that the plea in abatement has not been sustained and the defendant may have ten days in which to plead.

For plaintiff: J. L. Curran.

For defendant: P. S. Knauer.